## UNIVERSAL FILM EXCHANGES, Inc., v. LAVINE.

### No. 4895.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1935.

Irion & Switzer and Chas. B. Emery, all of Shreveport, for appellant.

Jackson & Smith and Chas. L. Mayer, all of Shreveport, for appellee.

DREW, Judge.

This is a suit upon several alleged contracts in which plaintiff is seeking to recover from defendant the amount shown in the contracts for alleged breach thereof by defendant.

The first two alleged contracts are dated March 3, 1930, and the others are dated April 19, 1930. The alleged contracts were for plaintiff to furnish to defendant certain named or titled motion pictures to be shown by defendant in his theater at Oil City, La. The alleged contracts, which were signed by defendant on the above dates, specifically declare that,

"* * * this agreement is not valid unless countersigned and approved by an officer or any other person duly authorized by Universal Film Exchanges, Incorporated."

The alleged contracts also provide that the pictures listed therein would not be sold to be played in Vivian, La., a nearby town, until thirty days after being played by defendant in Oil City. In the said alleged contracts play dates were agreed upon for "Tarzan the Tiger" to start on April 4, 1930, and continue weekly thereafter; and "Oswald Cartoons" on April 6th, and weekly thereafter. One or two other dates were agreed upon also. The remainder were left open to agreement between the parties in the future.

The two above listed pictures were not furnished defendant and he was forced to secure other pictures for those respective dates. Defendant was also notified later that "Tarzan the Tiger" could not be furnished, although he had advertised the showing of this picture very widely.

The alleged contracts show on their face that they were not accepted by plaintiff until April 28, 1930, and notice of acceptance was received by defendant on May 7, 1930. As to the first two alleged contracts, a period of two months and four days elapsed after defendant signed them before they were accepted by plaintiff; and as to the other contracts, a period of eighteen days elapsed. However, after the acceptance, defendant, by agreement with plaintiff as to play dates for certain pictures, played part of the pictures listed in the alleged contracts and paid for them. The remaining listed pictures were not played for the reason that when plaintiff would suggest play dates for them, defendant could not use them, due to other bookings, and when defendant suggested play dates for them, plaintiff could not furnish them.

The alleged contract is very lengthy and printed in the smallest type. It is most difficult to unravel just what it means, so much so that neither counsel for plaintiff nor defendant have offered much help as to its meaning. However, it is shown by the testimony offered by both plaintiff and defendant that it is only an agreement for defendant to use and show certain listed pictures on whatever dates the plaintiff and defendant might agree. In this case, apparently, through no fault of either, plaintiff and defendant could not agree on play dates for the pictures not used. Defendant shows that, had the contract been accepted timely by plaintiff, he could have used every picture listed; that he advertised certain pictures upon which play dates were agreed on in the application for contract, and could not secure the pictures. The testimony further shows that in one instance, plaintiff did not protect him against prior showing of a listed picture in Vivian, La., but offered same to him after it had been shown in Vivian. He further shows that plaintiff attempted to substitute different pictures for the ones listed in the agreement, under the pretext that it was only a change in title and not a change in the picture, when in fact it was a change of picture.

In August, 1930, defendant notified plaintiff that he had closed his theater and received in reply a letter stating that the pictures would be held up, and when he reopened, he could again book the pictures. He has never reopened. This suit was filed June 1, 1932, nearly two years thereafter.

Due to the nature of the agreement which was not complete in itself, but left open for future agreement between the parties the play dates of the different pictures, it is very evident that there was never a meeting of minds such as to constitute a valid contract

as to the pictures not played which were listed in the agreement. But if there had been, it is very clear that plaintiff has breached the agreement in so many instances, as above related, that it could not recover from defendant for failure to continue with the agreement. There is also another reason plaintiff cannot recover, which is set out in the eighth provision on the back of the agreement, and which specifically provides how the play dates shall be designated when they cannot be agreed upon. It provides that the distributor (plaintiff herein) in such event may at any time designate exhibition dates by mailing notice to the exhibitor (defendant herein) at least fourteen days before the fixing of exhibition date of each picture. At no time did plaintiff avail itself of this provision.

The lower court rejected the demands of plaintiff, and we find the judgment to be correct. It is affirmed, with costs.